IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DWAIN A. RODEHEAVER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB 05-2324 |
| CNH AMERICA, LLC, et al., | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Dwain A. Rodeheaver ("Plaintiff" or "Rodeheaver") initiated this products liability action against CNH America, LLC ("CNH") and Addison Farm & Industrial Equipment, Inc. ("Addison") (collectively, "Defendants") for injuries he sustained when his tractor ran over him.[1]  Plaintiff's complaint seeks damages for strict liability, negligence, and breach of implied warranty.[2]  Pending before this Court are the Motions for Summary Judgment of the Defendant Addison (Paper No. 14) and the Defendant CNH (Paper No. 18).  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For reasons stated below, both motions for summary judgment are GRANTED.

---

[1] Plaintiff also named New Holland North America, Inc. ("New Holland"), the manufacturer of the tractor, as a defendant in his Complaint.  However, New Holland was dismissed as a defendant on November 7, 2005 by stipulation of the parties and Order of this Court, because CNH is the "successor in interest" of New Holland as a result of a merger between the two companies.

[2] Count VI of the Complaint purports to state a cause of action for "Liability of Defendant New Holland Imputed to Defendant CNH."  This Count is moot because CNH admits to being the successor in interest of New Holland.  (*See* CNH's Answer ¶¶ 55-57.)

BACKGROUND

The following facts are viewed in a light most favorable to the Plaintiff as the non-moving party. On June 8, 2004, Plaintiff Dwain Rodeheaver purchased a New Holland tractor manufactured by Defendant CNH, model TC33DA, from Defendant Addison. Plaintiff also purchased several New Holland accessories for the tractor including a loader, backhoe, mower, and tiller.

According to the manufacturer's instructions, the brakes on the tractor were engaged by depressing a foot pedal. The parking brake was engaged by depressing the foot pedal and pulling a lever to engage a locking mechanism to hold the foot pedal down. On one prior occasion, Plaintiff noticed that the parking break failed to engage on his first attempt, but it worked on the second try and he continued to use the tractor without difficulty.

On August 17, 2004, at approximately 8:45 p.m., Plaintiff was operating the tractor on a dirt road near his property in Garrett County, Maryland. He wanted to remove stones from a pile of dirt he had just dumped, so he engaged the parking brake, noted that it was properly engaged, set the tractor's transmission to "neutral" and dismounted. The loader's bucket was raised above the headlights so that Plaintiff could see while working. After removing all the stones from the dirt, Plaintiff turned to get back on the tractor and saw that it had begun rolling backwards away from him. He ran after the tractor and tried to remount it in order to engage the brakes to stop it from rolling. However, Plaintiff got caught on the tractor and fell beneath it. He sustained multiple injuries to his back and ribs when the tractor rolled over him.

Rodeheaver continued to operate the subject tractor for the next several months. According to the undisputed evidence in this case, he did not have the tractor examined for three

months.³  By this time, the tractor had been utilized for an additional 58.5 hours. Rodeheaver continued to use the tractor, and it was not until January of 2005 that the tractor was inspected and the brakes were adjusted.

After the passage of more than one year, the Plaintiff then filed this products liability action on August 24, 2005, seeking damages for strict liability, negligence, and breach of implied warranty.  Defendant Addison filed a Motion for Summary Judgment on April 18, 2006 (Paper No. 14), and Defendant CNH filed a Motion for Summary Judgment on April 19, 2006 (Paper No. 18).  On September 29, 2006, Plaintiff filed a Motion for Leave to File Amended Complaint (Paper No. 25), which this Court denied on November 9, 2006 (Paper No. 27).

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences

---

³ *See* Yoder Dep. 36:1-37:5, Mar. 15, 2006.

drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, the nonmoving party must present evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252. This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

<div align="center">DISCUSSION</div>

**I.       Counts I & II: Strict Liability**

Rodeheaver alleges that Defendants CNH and Addison should be held strictly liable for manufacturing and selling him a defective tractor. In order to establish a strict products liability

<div align="center">4</div>

claim under Maryland law,[4] a plaintiff must show that "(1) the product was in a defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition." *Phipps v. General Motors Corp.*, 363 A.2d 955, 958 (Md. 1976) (citing Restatement (Second) of Torts § 402A (1965)).  This Court finds that Plaintiff has failed to present sufficient evidence to meet the first three of these four requirements.

### A.     Defect

Plaintiff claims the tractor he purchased from Defendant Addison that was manufactured by Defendant CNH had a defective parking brake.  There are three types of product defects that can support a products liability claim: design defects, manufacturing defects, and failure to warn defects.  *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 421-422 (D. Md. 2001) (citing *Simpson v. Standard Container Co.*, 527 A.2d 1337, 1339-40 (Md. Ct. Spec. App. 1987)).  Under Maryland law, a defect can be proven through "(1) direct proof based on the nature of the accident in the context of the particular product involved; (2) circumstantial proof based on an inference of a defect from a weighing of several factors; [or] (3) direct affirmative proof through opinion testimony by an expert witness."  *Shreve*, 166 F. Supp. 2d at 407-08.  Factors this Court can consider include (1) expert opinion as to possible causes for the accident, (2) how soon after the sale of the product the accident occurred, (3) whether the same accident occurred in similar

---

[4] Where, as here, this Court has jurisdiction based on diversity of citizenship, the substantive law of Maryland applies.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.").

products, (4) the absence of other causes for the accident, and (5) whether the accident was one that does not occur without a defect. *Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 549 A.2d 385, 390 (Md. Ct. Spec. App. 1988) (citations omitted).

Plaintiff's strict liability claim is premised on an alleged design defect. Specifically, the Complaint alleges that the tractor's "braking system . . . suffered from a serious design defect which allowed the locking mechanism to come disengaged thereby allowing the foot pedal to return to its default position disengaging the brakes." (Compl. ¶ 21.) Plaintiff testified in his deposition that on the day of the accident in August of 2004, he depressed the foot pedal and pulled the lever to set the parking brake before dismounting the tractor. (Rodeheaver Dep. 64:16-18, Mar. 15, 2006.) Even though the parking brake was supposedly engaged, the tractor rolled backwards away from him. (Rodeheaver Dep. 65:6-8, 15-18.) Thus, Plaintiff alleges that the parking brake failed and was defective. In order to survive summary judgment, Plaintiff must present sufficient evidence to create a genuine issue of material fact as to whether the brake was actually defective.

First, Plaintiff claims that the parking brake was defective because a component of the locking mechanism—called a pawl—slipped, causing the brake to disengage. (Pl.'s Mem. Opp'n Summ. J. 2-3.) In support of this contention, Plaintiff forecasts testimony by Menno Yoder ("Yoder"), a farm equipment mechanic who examined Rodeheaver's tractor three months after the accident on November 15, 2004. (*See id* (citing Yoder Dep. 36:1-37:5, Mar. 15, 2006).) Yoder observed that the brake pedal could be depressed far enough that the "pawl would go underneath, and indicated being in a locked position" but that "the vibration of the tractor caused the pawl to go forward." (Yoder Dep. 36:18-37:5.) Plaintiff also offers the deposition of Roland

Fisher, Jr. ("Fisher"), who tried to reenact what happened the day of the incident with tractor like Rodeheaver's. (*See* Pl.'s Mem. Opp'n Summ. J. 2 (citing Fisher Dep. 49:10-52:18).) In Fisher's opinion, when the brakes are adjusted according to the service manual's specifications, the pawl will remain in place, but if the brakes are not adjusted properly, the pawl can "flip over" and cause the parking brake to disengage. (Fisher Dep. 49:18-50:10.) Finally, Plaintiff offers the testimony of CNH's expert, Paul Miskinis ("Miskinis"), who testified about a similar incident in which the pawl went beyond the pedal. (Miskinis Dep. 26:6-15.)

      This forecasted evidence is not enough to create a genuine issue of material fact. There is no documentation or testimony that the tractor's brakes were adjusted to the proper specification at the time of the accident. Although the tractor was only approximately two months old at the time of the accident, Plaintiff had already logged 100 hours. (Rodeheaver Dep. 86:7-11.) He testified that he adjusted the brakes in July of 2004, before the incident, as part of the tractor's servicing. (Rodeheaver Dep. 86:7-17; 95:9-96:5.) However, he has not presented evidence confirming that these adjustments conformed with the specifications of the manual. His own expert, Yoder, examined the tractor almost three months after the incident, during which time the tractor had been used for an additional 58.5 hours. (Yoder Dep. 21:5-6.) Addison's mechanic did not inspect the tractor and adjust the brakes until January of 2005, and even more hours had been logged by that time. (CNH's Mem. Supp. Summ. J. Ex. M.) Thus, there is no reliable account of the brake's condition before or at the time of the incident. Plaintiff even acknowledged this dilemma in his response to the Defendants' motions: "[Neither] Plaintiff nor Defendants can establish whether the parking brake was in adjustment prior to or at the time of the accident." (Pl.'s Mem. Opp'n Summ. J. 3.) Thus, Plaintiff has not presented any

evidence that the parking brake had a defective locking mechanism at the time of the accident

Second, Plaintiff claims that the brakes were defective because the parking light could turn on before the brakes actually engaged.  (*See* Pl.'s Mem. Opp'n Summ. J. 3.)  In support, he cites testimony by Miskinis, who examined Plaintiff's tractor in March of 2006—more than one and a half years after the accident.  (*See* CNH's Mem. Supp. Summ. J. Ex. L.)  Miskinis testified that at a certain point early in the brake engagement process, "the park brake indicator light was illuminated without the tractor brakes being engaged."  (CNH's Mem. Supp. Summ. J. Ex. L at p. 2.)

This type of speculation generated long after the accident is not sufficient to create a genuine issue of material fact with respect to whether or not the brake light was defective.  In the absence of any evidence of the light's condition at the time of the incident, Plaintiff cannot prove that it came on when the brake was not engaged.  He even testified that he thought the brake was engaged before he dismounted the tractor on the day of the incident.  (Rodeheaver Dep. 64:16-18.)  Finally, even if Plaintiff could prove that the light came on before the brake engaged, the Complaint alleges that the brake mechanism became *disengaged*.  Nowhere in the Complaint does Plaintiff state that the light came on prematurely and caused him to stop pulling the lever before the brake actually engaged.

As noted above, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).  Even viewing the facts in a light most favorable to Plaintiff as the nonmoving party, there is simply not enough evidence to create a genuine issue of material fact as to the existence of a defect.

### B.     Unreasonably Dangerous

Even if the tractor were defective, Plaintiff has not demonstrated that the tractor was unreasonably dangerous to him as its operator. Maryland courts generally apply the "consumer expectations test" which defines an unreasonably dangerous product as "one which is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" *Phipps*, 363 A.2d at 959 (citing Restatement (Second) of Torts § 402A cmt. i (1965)); *Simpson*, 527 A.2d at 1340. Courts also weigh "the utility of the risk inherent in the design against the magnitude of the risk." *Phipps*, 363 A.2d at 960.

Defendants argue that the tractor could not be unreasonably dangerous because "there is no evidence that Plaintiff received a tractor that did not meet his expectations." (CNH's Mem. Supp. Summ. J. 9.) Plaintiff testified that he used the tractor for about 100 hours of work before the incident in August. (Rodeheaver Dep. 86:7-11.) During that period of use, Plaintiff could recall only one time when he depressed the brake pedal and pulled up on the lever but the pedal did not stay down. (Rodeheaver Dep. 88:2-16.) On that single occasion, the brake successfully engaged on the second try. (Rodeheaver Dep. 90:16-21.) Even after he recovered from the accident in August, Plaintiff continued to use the tractor for almost 100 additional hours over several months before getting the brake adjusted by Addison. (*See* Rodeheaver Dep. 105:3-6; CNH's Mem. Supp. Summ. J. Ex. M.) The fact that Plaintiff was able to use the tractor without difficulty before the accident and continued to use it even after the accident suggests that he did not perceive the tractor to be dangerous, as Defendants aptly note. (*See* CNH's Mem. Supp. Summ. J. 11.)

9

In addition, the warning labels and manuals instruct the user how to properly park the tractor.  (*See* CNH's Mem. Supp. Summ. J. Ex. K, O.)  The operator is supposed to lower the bucket all the way down for stability, put the engine in neutral, apply the parking brake, and turn the engine off.  (*Id*.)  As Defendant Addison points out, a "seller may reasonably assume that [warnings] will be read and heeded."  (*See* Addison's Mem. Supp. Summ. J. 9 (quoting Restatement (Second) of Torts § 402A cmt. j (1965)).)  Plaintiff has 50 years of experience working with farm equipment—much more than an "ordinary" consumer.  (*See* Rodeheaver Dep. 42:6-9.)  However, despite this knowledge, Plaintiff did not follow two of the four instructions in the manuals and on the warning labels.  He left the bucket raised, even though he acknowledges that he learned as a child to lower the bucket to the ground "whenever you can."  (Rodeheaver Dep. 44:8-20, 45:17-21, 50:12-18.)  He also left the engine running, because "if you work around machinery, you just don't turn them off all the time."  (Rodeheaver Dep. 53:13-19.)  An ordinary consumer would have heeded the warnings in recognition of the fact that tractors, like any other large pieces of machinery, can be dangerous.  Thus, when the operator follows instructions and heeds warnings, the tractor is not dangerous to an extent beyond what an ordinary consumer would expect.

Even when balancing the risk and utility of the tractor, the tractor was not unreasonably dangerous.  Plaintiff himself testified that he used the tractor for almost 100 hours *after* the accident.  (*See* Rodeheaver Dep. 105:3-6.)  Obviously the value of the tractor to Plaintiff, even in its allegedly defective state, clearly outweighed the risks of the parking brake failing.  Thus, Plaintiff has failed to present a genuine issue of material fact as to whether the tractor was unreasonably dangerous.

### C. Causation

While neither Defendant focused on the matter of causation in its submissions, there is no genuine issue of material fact with respect to causation. Even if the Plaintiff were able to present adequate proof that the tractor had a defective brake mechanism so as to cause it to be unreasonably dangerous, Rodeheaver could not show at trial that the alleged defect caused his injuries. His own actions in attempting to jump *back onto* the tractor while it was moving is evidence of a superseding intervening cause with respect to the occurrence of this accident. The Plaintiff's injuries occurred as a result of his own actions. There is simply no evidence presented to this Court to create a genuine issue of material fact with respect to causation.[5]

Accordingly, Plaintiff has not presented sufficient evidence to create a genuine issue of material fact on his strict liability claims.

### E. Defenses

Finally, Defendants argue that Plaintiff should not recover for damages because he misused the tractor and assumed the risk of injury by failing to heed the warning labels and owner's manual.

Defendant CNH contends that Plaintiff misused the tractor and therefore is barred from recovery. While misuse is not an affirmative defense to strict products liability, it does negate "a design defect claim and occurs when the product in question is used in a manner not reasonably foreseeable to the manufacturer and/or seller." *Lightolier v. Hoon*, 876 A.2d 100, 109 (Md.

---

[5] This Court need not address the final element of the strict liability test, because the parties do not dispute—and all evidence suggests—that the tractor reached Rodeheaver without a substantial change in its condition. (*See* Addison's Mem. Supp. Summ. J. 6-12; CNH's Mem. Supp. Summ. J. 7-11.)

2005) (citing *Ellsworth v. Sherne Lingerie, Inc.*, 495 A.2d 348, 355 (Md. 1985)). It is undisputed by the parties in this case that Rodeheaver left the bucket raised and the engine running when he dismounted the tractor. This action was in direct contravention to the manuals and warning labels which specifically instructed Rodeheaver not to operate the tractor in this fashion.

In the face of this clear evidence of his misuse of the tractor, Rodeheaver contends that "[i]t would certainly be foreseeable that an operator would raise the bucket in order to use the lights and illuminate the area directly in front of the tractor." (Pl.'s Mem. Opp'n Summ. J. 9.) In short, the Plaintiff contends that such misuse would be foreseeable. However, this argument is not supported by Maryland law. The Defendant Addison has aptly noted the case of *Simpson v. Standard Container Co.*, in which children were injured when they opened and spilled a container of gasoline and it ignited. (*See* Addison's Mem. Supp. Summ. J. 7-8 (citing *Simpson*, 527 A.2d at 1337).) In that case, the Maryland Court of Special Appeals held that the parents misused the product by leaving it in the house. *Simpson*, 527 A.2d at 1341. The court found that their use was not reasonably foreseeable, because the container bore clear warnings that it was not to be left in living areas. Addison claims that, just like the parents in *Simpson*, Rodeheaver failed to heed the warnings about the proper way to park the tractor in a way that was unreasonably foreseeable to the Defendants. (*See* Addison's Mem. Supp. Summ. J. 7-9.)

Accordingly, this Court is compelled to find that there is no genuine issue of material fact on the issue of misuse of the tractor. The Plaintiff clearly did not comply with instructions and misused the tractor. This misuse negates the element of a defect, even if the jury found that such

a defect existed. *See Simpson*, 527 A.2d at 1341 ("misuse negates the element of defect").[6]  In conclusion, Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to his strict liability claims and Defendants are entitled to judgment as a matter of law. Thus, Defendants' motions for summary judgment are GRANTED as to Counts I and II.

## II.     Counts III & IV: Negligence

Plaintiff claims that Defendants were negligent in manufacturing and selling him a defective tractor.  Ordinarily under Maryland law, "[t]o establish a cause of action in negligence a plaintiff must prove the existence of four elements: a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat'l Bank*, 515 A.2d 756, 758 (Md. 1986) (citations omitted).  However, in a products liability case, a plaintiff must more specifically prove "(1) the existence of a defect; (2) the attribution of the defect to the seller; and (3) a causal relationship between the defect and the injury." *Stanley Martin Cos., Inc. v. Universal Forest Products Shoffner LLC*, 396 F. Supp. 2d 606, 619 (D. Md. 2005) ("This standard applies whether a claim is characterized as negligence, strict liability, or breach of warranty.").  As discussed above, there is insufficient evidence for a jury to find that the brake was defective or that the allegedly defective brake caused Plaintiff's injuries.

### A.     Count III: Defendant CNH

In Count III, Plaintiff claims that CNH owed him a duty to "design, manufacture and sell

---

[6] Defendants also contend that Plaintiff assumed the risk of injury as a matter of law. There is no evidence that Rodeheaver was aware of any defect in the parking brake before the accident in August of 2004.  However, in light of this Court's findings that there is no evidence of a defect and that Plaintiff misused the tractor, this argument need not be addressed.


a reasonably safe tractor." (Compl. ¶ 41.) Clearly, CNH owes all its customers that duty. However, there is no evidence that CNH breached the duty. There is simply no evidence that the subject tractor was unsafe at the time of the accident in August of 2004. There is no evidence that it was not safe when used properly and in accordance with the instructions. Thus, Defendant CNH is entitled to summary judgment as a matter of law as to Count III.

Furthermore, Defendant CNH alleges alternatively that Plaintiff is barred from recovering on his negligence claim because he was contributorily negligent as a matter of law. (*See* CNH's Mem. Supp. Summ. J. 11-13.) Contributory negligence can be defined as "the failure to observe ordinary care for one's own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Menish v. Polinger Co.*, 356 A.2d 233, 236 (Md. 1976) (citations omitted).

In this case, Rodeheaver was injured when he ran after and tried to mount the moving tractor in order to prevent serious damage to it. (*See* Rodeheaver Dep. 65:7-66:5.) As Defendant Addison comments, "[c]ommon sense dictates that one does not try to mount a moving tractor," and "the danger inherent in trying to jump on a moving tractor is *patent* and *obvious*." (Addison Mem. Supp. Summ. J. 9 (emphasis in original).) This Court finds that no reasonable jury at trial could find it reasonable for an individual to run after a moving piece of farm equipment and try to jump on it. Rodeheaver's previous success in stopping a tractor in that manner when he was a child in no way renders his actions in August of 2004 reasonable. (Rodeheaver 103:6-104:2.) Thus, Defendant CNH's Motion for Summary Judgment is GRANTED as to Count III.

B.   **Count IV: Defendant Addison**

In Count IV, Plaintiff claims that Addison owed him a "duty to inspect the tractor prior to sale" and that a reasonable inspection would have "disclosed the presence of any misaligned or maladjusted brake components." (Compl. ¶¶ 45, 47.) There is a dispute of fact as to whether any inspection occurred. Ronald Fisher, an employee of Addison, testified that a "pre-delivery inspection" was done on Plaintiff's tractor. (Fisher Dep. 13:2-7.) However, Fisher was not present for the inspection, and he could not produce any documentation that it took place, even though forms are usually filled out for both Addison and the customer. (Fisher Dep. 13:8-22.) Also, Paul Miskinis, who inspected the tractor for CNH, noted in his report that the "predelivery report on pages 4-13, 4-14, 4-15 and 4-16 [of the tractor operator's manual] was not completed or signed by Addison or the owner." (CNH Mem. Supp. Summ. J. Ex. L.) Thus, there is a genuine issue as to whether Addison breached its duty to inspect the tractor.

However, even if Addison breached its duty by failing to inspect the tractor before delivering it to Rodeheaver, Plaintiff has not presented enough evidence that the breach actually or proximately caused his injuries. He had used the tractor for approximately 100 hours after it was delivered before the accident, so the brakes could have become misaligned as a result of that use. In addition, the alleged brake failure, regardless of the reason for it, was not the proximate cause of his injuries. Plaintiff's own action in trying to jump onto the tractor while it was moving away from him breaks any possible causal link between the parking brake's alleged malfunction and his injuries. Had he merely allowed the tractor to roll into the bank, he would not have been injured.

Plaintiff also raises the theory of *res ipsa loquitur* for the proposition that Addison was

negligent in delivering the tractor with misaligned brakes.  (Pl.'s Mem. Opp'n Summ. J. 9-10.)  In order to establish an inference of negligence under that doctrine a plaintiff must show: "(1) a casualty of a kind that does not ordinarily occur absent negligence, (2) that was caused by an instrumentality exclusively in the defendant's control, and (3) that was not caused by an act or omission of the plaintiff."  *Norris v. Ross Stores, Inc.*, 859 A.2d 266, 271 (Md. Ct. Spec. App. 2004) (quoting *Holzhauer v. Saks & Co.*, 697 A.2d 89 (1997)).  Plaintiff's argument has no merit, however, because his own actions in using the tractor for 100 hours of work before the accident and by jumping onto the moving tractor the day of the accident automatically defeat the second and third elements of the test, respectively.

Thus, Addison's Motion for Summary Judgment is GRANTED as to Count IV.

### III.   Count V: Breach of Implied Warranty

Finally, Plaintiff alleges that Defendants breached an implied warranty of merchantability.  "A warranty of merchantability is implied in the contract of sale when the seller of goods is a merchant with respect to goods of that kind."  *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 421-422 (D. Md. 2001) (citing *Virgil v. "Kash N' Karry" Service Corp.*, 484 A.2d 652, 655 (Md. Ct. Spec. App. 1984); Md. Code Ann., Com. Law I § 2-314(1) (1997)).  A "seller" in this context includes the manufacturer, the retailer, and other individuals or entities in the chain of distribution.  Md. Code Ann., Com. Law I § 2-314(a) (LexisNexis 2005).  To be merchantable, goods must at least be "fit for the ordinary purposes for which such goods are used; . . ."  *Id*. § 2-314(d), (f).

In this case, it is undisputed that Addison, a dealer of CNH tractors, sold the tractor in question to Plaintiff, so Addison clearly qualifies as both a "seller" and "merchant with respect

to goods of that kind" under Maryland law.  (*See* CNH's Mem. Supp. Summ. J. Ex. H-I.)  Although the tractor is a New Holland model, CNH designed and assembled most of it and is therefore also a "seller" and "merchant with respect to goods of that kind." (*See id.* at 3.)  Thus, an implied warranty of merchantability accompanied Plaintiff's purchase of the tractor.

As to whether the tractor was fit for ordinary use, Plaintiff testified in his deposition that he used the tractor for approximately 100 hours between when he purchased the tractor in June 2004 and the incident in August 2004.  (*See* Rodeheaver Dep. 100:11-14.)  During that two-month period, Rodeheaver recalled one time when the brake pedal would not stay depressed after he lifted the locking lever on the first try.  (*See* Rodeheaver Dep. 88:5-16; 90:14-21.)  In addition, he claims that the brakes malfunctioned on the day of the incident giving rise to this cause of action.  However, despite these two incidents, Plaintiff was still able to use the tractor after the accident for approximately 100 hours before getting the brakes adjusted.  (*See* CNH Mem. Supp. Summ. J. Ex. M.)  Finally, as Defendant Addison notes, "when the tractor is properly used and warnings read and heeded the tractor is safe for its ordinary and intended uses." (Addison's Mem. Supp. Summ. J. 14.)  There is no evidence from which a reasonable jury could find that the tractor was unfit for ordinary use.

Even if the tractor were considered unfit, in order to succeed on a claim for breach of implied warranty of merchantability in a products liability action, "[p]roof of defect, attribution of the defect to the seller, and a causal relation between the defect and injury are necessary . . . just as they are for strict liability claims." *Shreve,* 166 F. Supp. 2d at 422 (citations omitted).  The continued use of the tractor by the Plaintiff and the passage of time before the tractor was even examined preclude the Plaintiff from creating genuine issues of material fact by

17

speculation. There is woefully insufficient evidence in this case to create genuine issues of material fact as to the existence of a defective parking brake and whether that defect caused Plaintiff's injuries. *See supra* Part I.A. Thus, even viewing the facts in a light most favorable to Plaintiff, there are no genuine issues of material fact as to whether Defendants breached their implied warranty of merchantability. Accordingly, Defendants are entitled to judgment as a matter of law and their motions for summary judgment are GRANTED as to Count V.

## CONCLUSION

For the reasons stated above, Defendant Addison's Motion for Summary Judgment is GRANTED and Defendant CNH's Motion for Summary Judgment is GRANTED. A separate Order follows.


Dated:   February 7, 2007            /s/
                                     Richard D. Bennett
                                     United States District Judge